No. 13,496.

SCHNEIDER ET AL. *v*. PEOPLE EX REL. GRANT ET AL.
(35 P. [2d] 498)

Decided July 9, 1934.

Mr. JAMES D. PARRIOTT, Mr. FREDERICK P. CRANSTON, Mr. FRANK L. HAYS, for plaintiffs in error.

Mr. W. W. GRANT, JR., Mr. JAMES W. KELLEY, Mr. EDGAR McCOMB, for defendants in error.

*En Banc.*

Mr. Justice Bouck delivered the opinion of the court.

The district court issued an alternative writ of mandamus at the instance of the relators W. W. Grant, Jr., James W. Kelley and Edgar McComb, as the members of the civil service commission of the City and County of Denver, commanding Denver's mayor and council either to appropriate forthwith $2,000 for the commission's expenses in addition to the appropriation of $2,560 theretofore made for that purpose in the annual appropriation ordinance for the year 1934, or else to show cause why they do not do so. Due return was made, setting forth the situation hereinafter described, and pleading the insufficiency of municipal funds to satisfy an additional appropriation; a demurrer to the alternative writ was overruled; evidence was taken; and the alternative writ was made permanent, except that the additional sum so ordered to be appropriated was reduced from $2,000 to $1,740, which latter sum, when added to the $2,560 already appropriated, exactly equals what the commission originally demanded in its budget, hereinafter quoted.

On its surface the case involves the respective rights and duties of the commission and of the City and County of Denver in relation to expenditures by or on behalf of the commission, though this is so only in a limited sense. Attorneys for the commission contend that it has inherent power to determine how much it shall expend in carrying on its work. Attorneys for Denver contend, on the other hand, that the commission must make up its budget estimates as other departments do, and that the mayor and the council are entitled to follow the customary procedure prescribed by the charter of Denver, allowing so much as in their sound judgment is necessary and reasonably available for the work of the commission. Neither of these contentions is wholly correct.

The difference of view is partly illustrated by the budget which the commission certified to the mayor, and by the council's ensuing appropriation made for the commission. The commission's budget was this:

"Supervision .....................$2,400.00
 Clerk's stenographers, etc........ 1,500.00
 Office supplies .................. 150.00
 Furniture and fixtures........... 100.00
 Advertising .................... 25.00
 Rent of equipment............... 50.00
 Postage ........................ 25.00
 Other expenses.................. 50.00

         $4,300.00"

The mayor's recommendation was that the council appropriate for the commission only $2,560, namely $2,400 as the annual salary of the commission's secretary, and the balance of $160 for printing, postage, stationery and all incidental expenses of the commission.

The council accordingly incorporated the mayor's figures in its appropriation ordinance, notwithstanding that a petition was presented by the commission giving its reasons why another $2,000 should be appropriated.

The charter of Denver adopted in 1904 contains the following: "The present members of the civil service commission shall serve their full terms. Their successors shall be selected and appointed by the judges of the district court of the City and County of Denver. The civil service charter provisions in force at the adoption of this amendment shall only continue in force as to the classified service of the fire and police, not including the chief of police, but in all other departments, or offices created or recognized herein, the mayor or the head responsible for the administration of the department, or office, shall make the appointments and dismissals. Provided, however, that the civil service commission shall examine all persons so appointed (except heads of departments and of offices, chief deputies, the

attorney's professional assistants, and laborers) as to their qualifications to perform the duties for which they are appointed, and whenever any such appointee is found incompetent by said civil service commission, such appointment shall thereafter be void." Municipal Code of 1927, page 120, section 220.

This charter also makes detailed provision for examinations to be given by the commission to those who wish to enter the classified civil service. Id., page 121, section 223, et seq. The names of those passing the examinations are entered on a register according to grade, and are to remain there "at least one year, but in no event more than two years without further examination." Id., page 122, section 230.

Obviously the charter intended to constitute the commission an important and permanent factor in the governmental system of Denver. All the members of both the police and the fire department, excepting only the chief of police, are in the classified service. They are appointed from the eligible lists created by grading those who take the examinations. It is easy to see that, under the charter provisions, examinations must be regularly and consistently conducted. To omit such examinations would threaten defeat for the entire civil service system.

The duties of the commission are manifestly numerous and exacting, and its work requires services that in the very nature of things are highly confidential. Its members serve without compensation. But, in order that the commission may function successfully, its office must of course be thoroughly organized in a way that insures the proper secrecy and the safeguarding of its administrative work, and of the collecting and preservation of its records and official information, both documentary and otherwise.

The charter provides: "The council shall furnish the commission with suitable offices, office furniture, rooms for examinations, books, stationery, blanks, printing, heat and light and all other necessary supplies, and shall

provide for the payment of such other expenses as may be necessarily incurred in carrying out the provisions of this article." Municipal Code of 1927, page 125, section 241.

Furthermore, the charter amendment adopted in 1916, which is commonly known as the Speer Amendment, provides as follows: "All persons in the employ of the city and county, or any of the departments thereof, whose salaries or compensations are not fixed in this charter amendment, are hereby declared to be employes, and shall be appointed by the mayor or department head, and their compensation shall be fixed by ordinance, except that this provision shall not apply to the appointing or the compensation of the employes of the public utilities commission, nor to the appointing of the employes of the auditor, *civil service commission* and election commission." (Italics are ours.) Id., page 161, section 315.

It is earnestly argued that, in view of the charter provisions, the commission must be supplied with the wherewithal for doing its work without interference from any other officer or department of the municipality, and that mandamus is the appropriate remedy.

The above quoted section 315 undoubtedly confers upon the commission the right to appoint its own employees.

Counsel say that the various pertinent sections of the charter also vest in the commission itself the absolute right to make the determination of what supplies are needed for its work and what other expenses are necessary therein.

But even if this argument were sound, mandamus would not be the proper remedy. A writ of mandamus lies only when on the one side there is a clear legal right to demand the doing of a certain thing, and on the other side a clear legal duty to do it. Here neither the right nor the duty is thus present. Moreover, it seems clear that the ordinary and usual methods in procuring payment of valid claims against the municipality are

sufficient to enforce any such claim incurred by or under the authority of the commission. At all events, there is apparently no lack of plain, speedy and adequate remedies at law. The trial court erred by issuing the writ.

Though an application for supersedeas is pending herein, both sides request final disposition. The judgment will therefore be reversed and the case remanded with directions to dismiss.

Judgment reversed.

MR. JUSTICE BUTLER specially concurring.

MR. JUSTICE CAMPBELL not participating.

MR. JUSTICE BUTLER, concurring.

I concur in the reversal of the judgment. The charter, quoted in the main opinion, makes it the duty of the council to provide for the payment of "such other expenses as may be necessarily incurred in carrying out the provisions of this article." If the commission should incur such necessary expenses in the performance of its duties and the city and county should refuse to pay the same, those entitled to compensation could recover judgment therefor in an action against the municipality. Such remedy would be adequate; and where there exists an adequate remedy in the ordinary course of law, mandamus will not lie. The commission, it seems to me, is not entitled to a writ of mandamus to compel the inclusion in the budget of estimated items of expense that the commission believes that it will incur.